## Johnson Disbarment Case.

Argued March 18, 1966. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Robert R. Johnson, Jr.,* appellant, in propria persona.

*M. Anderson,* with him *Robert A. Rundle,* for appellee.

OPINION PER CURIAM, May 24, 1966:

On December 28, 1964, James F. Allgeier filed a complaint with the Committee on Offenses of the Allegheny County Bar (Committee), charging that Robert R. Johnson, Jr., a member of the bar of Allegheny County, had been guilty of professional misconduct. A subcommittee appointed by the Committee held hearings on Allgeier's complaint and, upon the completion of said hearings, recommended to the Committee that Johnson should be disbarred. The Committee, adopting its subcommittee's report, recommended such disbarment and the Board of Judges of the Court of Common Pleas of Allegheny County, after due consideration of the matter, entered an order disbarring Johnson and striking his name from the roll of attorneys. From that order Johnson has appealed to this Court.

The Act of April 14, 1834, P. L. 333, §74, 17 P.S. §1662, provides: "If any such attorney shall retain money belonging to his client, after demand made by the client for the payment thereof, it shall be the duty of the court to cause the name of such attorney to be stricken from the record of attorneys and to prevent him from prosecuting longer in the said court." If the conduct of an attorney is demonstrably within the purview of this statute, disbarment is mandatory: *Wolak's Case,* 336 Pa. 405, 9 A. 2d 551; *Snyder v. Board of Governance,* 344 Pa. 524, 26 A. 2d 333. Even without this statutory provision, it is within the inherent power of the court to strike from the roll of attorneys any attorney who shall retain, after demand, moneys belonging to a client: *In Re Graffius,* 241 Pa. 222, 88 A. 429.

On March 25, 1964, Johnson and Allgeier, then in a lawyer-client relationship, entered into an escrow agreement. Johnson having been paid a $500 retaining fee, he and Allgeier entered into a written agreement under the terms of which Johnson would seek to obtain the full release of one Martha Rose—to whom

Allgeier at the time was expecting to be married—from a suspended sentence and five year probation which she was then serving as a result of her conviction on a narcotics charge; Allgeier was to deposit $1500 in an account with the Mellon National Bank and Trust Company entitled "Robert F. Johnson, Jr. and James F. Allgeier, Escrow Account" and withdrawals from said account were to be made only on the joint signatures of Johnson and Allgeier; the condition of the escrow was that, if Johnson was successful in obtaining a full release for Martha Rose within a six months period, Johnson was to be paid the $1500 but, if he was not successful, then the money was to be returned to Allgeier. Allgeier and Johnson set up the account, Allgeier deposited $1500 therein and, within two months, through the medium of three checks purporting to bear the signatures of both Johnson and Allgeier three withdrawals totalling $1490 were made from the account.* Such withdrawals were made without the knowledge of Allgeier and there was presented to the subcommittee the testimony of a handwriting expert that the same hand that wrote Robert R. Johnson, Jr., on the three withdrawal checks wrote Johnson's name on concededly genuine documents. All the checks were endorsed, by rubber stamp or otherwise, for deposit in Johnson's own account and the instant record contains no satisfactory explanation on the part of Johnson for such deposits. By a document executed October 1, 1964—after the expiration of the six months period under the escrow agreement and after a demand for the return of the money by Allgeier—Johnson acknowledged that Allgeier was entitled to a return of the proceeds of the escrow account. To effectuate a return to Allgeier of the escrow moneys a check was

---

* The first withdrawal, in the amount of $1000, was made the day after the account was established.

drawn and signed by Allgeier and Johnson but was not paid because of insufficient funds in the account, there being less than $10 in the account at the time.

Johnson's explanation of the withdrawal of the funds from the account was that Martha Rose had taken from his office some of the blank escrow account checks and, inferentially, that she or some other person forged the signatures of both Allgeier and Johnson to the withdrawal checks. Morever, Johnson takes the position that Martha Rose, not Allgeier, was his client in the matter. Johnson's explanation was vague, evasive and completely unsatisfactory and dealt with speculation rather than proof in support of his conduct.

We have carefully examined the instant record. We have considered at great length the explanation—advanced at the hearings, in his written briefs and his own oral argument before this Court—and the attempted justification of his conduct by Johnson. We are fully satisfied that the findings and conclusions of the subcommittee—adopted by the Committee and accepted by the court below—are amply supported by the evidence of record. Despite Johnson's contention that the subcommittee failed to accord him procedural due process, we find, on the contrary, that the subcommittee extended to Johnson full and adequate procedural safeguards of his rights and privileges.

It is the duty of the courts to maintain the integrity of the Bar and to see that courts and its members "do not fall into disrepute with the general public through such unprofessional or fraudulent conduct" of attorneys: (*Forman's Case,* 321 Pa. 47, 184 A. 75). "The power of a court to disbar an attorney should be exercised with great caution but there should be no hesitation in exercising it when it clearly appears that it is demanded for the protection of the public. The court by admitting an attorney to practice endorses him to the public as worthy of confidence in his professional re-

lations and if he becomes unworthy, it is its duty to withdraw its endorsement: [citing an authority].": *In Re Graffius*, 241 Pa. 222, 223, 224, 88 A. 429. The conduct of Johnson as revealed by the instant record fully justifies his expulsion from the profession and the striking of his name from the roll of attorneys.

Order affirmed.