## In re Anonymous No. 25 D.B. 88

Disciplinary Board Docket No. 25 D.B. 88.

KELLER, *Past Chair*, September 17, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

### HISTORY OF PROCEEDINGS

The Pennsylvania Supreme Court issued an order on March 21, 1988, immediately suspending respondent from the practice of law. The order was entered in accordance with Rule 214(d), Pa.R.D.E., on the basis of respondent's January 22, 1988 conviction in the U.S. District Court for the [   ] District of Pennsylvania on charges of conspiracy to participate in the affairs of an enterprise through a pattern of racketeering in violation of 18 U.S.C.

§1962(d). As a result of his conviction, respondent was sentenced to serve a term of imprisonment of five years and fined the sum of $5,000.

The Office of Disciplinary Counsel filed a petition for discipline against respondent on the basis of his conviction. The petition alleged that the conduct which led to respondent's criminal conviction violated eight disciplinary rules. No answer was filed by respondent.

A hearing of the matter was held on October 5, 1990, before Hearing Committee [    ], which was chaired by [    ], Esq., and included members [    ], Esq., and [    ], Esq. Hearing Committee [    ] filed its report on June 6, 1991, and recommended that respondent be disbarred from the practice of law.

On July 19, 1991, respondent filed a brief on exceptions, in which respondent advocated for a sanction less than disbarment.

On July 24, 1991, the Office of Disciplinary Counsel filed a brief opposing exceptions, in which Disciplinary Counsel agreed with the Hearing Committee that disbarment of respondent is proper.

The matter was adjudicated at the September 27, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

(1) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pennsylvania, is invested pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of

an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [ ], is currently suspended from the practice of law by order of the Supreme Court of Pennsylvania dated March 21, 1988, entered pursuant to Rule 214(d), Pa.R.D.E.

(3) Respondent's most recent registered residence address is [ ]. His attorney registration number is [ ].

(4) On or about August 20, 1987, respondent was indicted by a grand jury sitting in the U.S. District Court for the [ ] District of Pennsylvania in the matter of *United States of America v. [Respondent] et al.,* Criminal no. [ ].

(5) On January 22, 1988, after a trial before the Honorable [A] and a jury, respondent was found guilty of Count I of the indictment charging conspiracy to participate in the affairs of an enterprise through a pattern of racketeering in violation of 18 U.S.C. §1962(d).

(6) Count I of the indictment charged that respondent, while an attorney licensed to practice law in the Commonwealth of Pennsylvania, conspired with [B], then a judge of the Court of Common Pleas; [C], [B's] personal aide; and [D], an associate of [B]; "and with other persons both known and unknown" to:

"Unlawfully, knowingly and willfully combine, conspire, confederate and agree with each other and with others, to violate Title 18, U.S.C. §1962(c), namely, to conduct and participate directly and indirectly in the conduct of affairs of the Court of Common Pleas of [ ]

County, an enterprise engaged in and the activities of which affected interstate commerce, through a pattern of racketeering activity, as that term is defined in Title 18, U.S.C. §1961(5), consisting of:

"(a) multiple acts of bribery of public officials in violation of 18 Pa.C.S. §4701; and

"(b) multiple acts of extortion under color of official right, in violation of Title 18, U.S.C. §1951(a)." (Exh. B, pp. 2-4.)

(7) The purpose of the conspiracy was to "corruptly influence the outcome of judicial proceedings pending in the [   ] court system through bribery and extortion." (Exh. B, p. 4, para. 5.)

(8) The indictment further charged that it was part of the conspiracy "that the defendants would and did utilize the Court of Common Pleas as a means of corruptly obtaining money and other things of value in exchange for the handling and disposing of judicial proceedings pending in the [   ] court system." (Exh. B, p. 4, para. 5.)

(9) Respondent was found guilty of a conspiracy which included: (a) steering cases involving criminal defendants to certain attorneys and judges in the court system of [   ] County to obtain favorable results; (b) raising bail or imposing jail sentences upon criminal defendants in order to solicit money from them or their relatives in exchange for their freedom; (c) corruptly handling and disposing of cases in the Courts of [   ] County for profit; and (d) soliciting criminal defendants, their relatives, or their attorneys in the Courts of [   ] County for money in exchange for favorable treatment of pending criminal cases.

(10) Respondent was found guilty of conspiracy to affect the outcome of five criminal cases: *Commonwealth v. [E], Commonwealth v. [F], Commonwealth v. [G], Commonwealth v. [H],* and *Commonwealth v. [I].*

(11) On or about October 18, 1985, [E] was arrested and charged with various drug offenses.

(12) On or about May 13, 1986, [E] appeared before [B], and was represented by respondent.

(13) On or about May 13, 1986, [B] suppressed the drugs in the [E] case based on credibility, stating that the District Attorney's Office should have produced two additional eyewitnesses to the police search and seizure.

(14) On or about May 13, 1986, [B] told the court officer in courtroom [   ] of City Hall to tell respondent to leave and come back later because [B] did not want to hurt the assistant district attorney on the [E] case.

(15) On or about May 14, 1986, [B] asked respondent if he had any objections to the *[E]* case being nolle prossed.

(16) On or about May 14, 1986, [B] and [C] discussed how respondent failed to raise the issue of the two additional witnesses who were not present to testify for the prosecution in the [E] case. [B] instructed [C] to go to see respondent because [B] "should not be talked to on the phone."

(17) On or about May 23, 1986, while discussing his need for money, [B] told [C] to find respondent.

(18) Respondent paid [C] $700 to "fix" the *[E]* case.

(19) [C] received $250; [B] received the balance.

(20) [F], a court reporter who was sometimes assigned to [B's] courtroom, was arrested on April 12, 1986, and charged with possession of controlled substances.

(21) In or about April 1986, [B] referred [F] to respondent for representation.

(22) [B] was to receive part of the fee for referring the case to respondent.

(23) [F] retained respondent for a fee of $1,500. Her initial payment to him was in two separate checks for $500 each.

(24) On or about May 19, 1986, [B] told an attorney in the anteroom/robing room of courtroom [    ] that [F] had called him and asked if her case was "fixed yet." (Exh. B, p. 11)

(25) The preliminary hearing for the [F] case was continued several times pending payment of respondent's fee.

(26) On or about September 9, 1986, respondent paid [B] $50 in the anteroom/robing room of courtroom [    ] in City Hall, [    ]. Following the payment, respondent discussed his need for a continuance on September 10, 1986, for the *[F]* case pending before a judge of the [    ] Court.

(27) On or about September 10, 1986, [B] asked the [    ] Court judge in the *[F]* case to give respondent a continuance on the case and the case was then continued and reassigned to another court judge.

(28) On or about September 10, 1986, [B] told [F] that he had obtained a continuance in her case and had moved her case before another judge.

210

(29) On or about October 16, 1986, [F] was acquitted of all charges in [ ] Court.

(30) On or about September 21, 1985, [G] was charged with delivery, possession, and intent to deliver methamphetamine.

(31) On or about May 28, 1986, [B] found [G] guilty of various drug offenses and raised the bail of defendant who was represented by the [J].

(32) Defendant [G] was immediately incarcerated.

(33) Defendant [G] asked to see his attorney and fully expected to see the [J] who had represented him at trial; however, respondent met him in the cell room.

(34) [B] had directed respondent to identify himself falsely as the attorney representing defendant [G].

(35) Respondent told defendant [G] that for $2,000 respondent could have him brought back down in front of Judge [B], have his original bail reinstated, and have him set up in a drug program and back on the streets. [G] would not have to do any time.

(36) On or about May 30, 1986, [C] telephoned respondent at the direction of [B] and asked respondent to "stop by and see us with the big money?" (Exh. B, p. 13)

(37) On or about September 13, 1985, [H] was arrested and charged with various burglary offenses.

(38) [C] arranged for respondent to represent [H].

(39) [H] did not pay respondent's fee and on or about August 15, 1986, [B] revoked [H's] bail and imposed bail of $50,000.

(40) [H] was immediately taken to the cell room in City Hall.

(41)   Respondent met with defendant [H] in the cell room and informed him that he would remain in custody until the balance of his fee was paid.

(42)   Respondent telephoned [K], defendant's father, and informed him that respondent represented his son; that his son owed respondent money, and that the judge was going to detain his son until some of the fee was paid.   Respondent requested that $150 be paid immediately.

(43)   [K] took $150 to respondent's office and left it with his secretary.

(44)   On or about August 15, 1986, [B] told respondent to give him $50.

(45)   On or about August 15, 1986, [B] ordered the release of [H] from custody.

(46)   On or about August 30, 1986, [I] was arrested and charged with possession of controlled substances.

(47)   [B] arranged for respondent to represent [I].

(48)   In or about early October 1986, [I] delivered $500 to [L] in [M's] Bar.

(49)   On or about October 7, 1986, the case of *Commonwealth v. [I]* was assigned to courtroom [    ] following [I's] arraignment.

(50)   On or about October 10, 1986, following the assignment of [I's] case to courtroom [    ], [B] told [L] that they needed money to pay the person who was doing arraignments "for putting the case there." (Exh. B, p. 18)

(51)   As a result of respondent's conviction on Count I, he was sentenced to a term of imprisonment of five years and fined the sum of $5,000 on March 2, 1988.

(52) Respondent was suspended from the practice of law as a result of his conviction by order of the Supreme Court of Pennsylvania dated March 21, 1988, which was entered pursuant to Pennsylvania Rule of Disciplinary Enforcement 214(d).

(53) The order of March 21, 1988, referred the matter to the Disciplinary Board pursuant to Rule 214(f) for the purpose of determining imposition of final discipline.

(54) In August of 1989, Judge [A] reduced the respondent's sentence from 5 years to 3 1/2 years, which made respondent eligible for parole after serving one-third of the sentence.

(55) Respondent was released from custody on July 27, 1990.

## CONCLUSIONS OF LAW

(1) Respondent's January 22, 1988, conviction for violation of 18 U.S.C. §1962(d) is a conviction under Rule 214(d), Pa.R.D.E.

(2) Respondent's conviction constitutes a per se independent basis for discipline under Rule 203(b)(1), Pa.R.D.E.

(3) Respondent's aforementioned misconduct violated the following Disciplinary Rules of the Code of Professional Responsibility:

"(a) D.R. 1-102(A)(1), which states that a lawyer shall not violate a Disciplinary Rule;

"(b) D.R. 1-102(A)(3), which states that a lawyer shall not engage in illegal conduct involving moral turpitude;

"(c) D.R. 1-102(A)(4), which states that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

"(d) D.R. 1-102(A)(5), which states that a lawyer shall not engage in conduct that is prejudicial to the administration of justice;

"(e) D.R. 1-102(A)(6), which states that a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

"(f) D.R. 7-110(A), which prohibits a lawyer from giving or lending anything of value to a judge, official, or employee of a tribunal;

"(g) D.R. 7-110(B), which prohibits a lawyer, in an adversary proceeding, from communicating or causing another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending;

"(h) D.R. 9-101(D), which prohibits a lawyer from stating or implying that he is able to influence improperly or upon irrelevant grounds a tribunal, legislative body or public official."

## DISCUSSION

Respondent's criminal conviction constitutes a per se ground for discipline pursuant to Enforcement Rule 203(b)(1), Pa.R.D.E. Since respondent's misconduct establishes a basis for the imposition of discipline, the only issue remaining is the extent of the discipline to be imposed.

The primary purpose of our system of lawyer discipline is to protect the public from unfit attorneys and to maintain

the integrity of the legal system. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987). Disciplinary procedures have been established as a catharsis for the profession and a prophylactic for the public. *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981). Where the disciplinary proceeding arises out of an attorney's conviction of a crime, the inquiry must focus on whether the attorney's character, as shown by his conduct, makes him unfit to practice law from the standpoint of protecting the public and the courts. *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975).

Respondent's conduct consisted of bribing a judge and a judicial officer for favorable court rulings, conspiracy with a judge to raise bail or impose jail sentences upon criminal defendants until respondent's legal fees were paid, conspiring with a judge to raise bail or impose jail sentences in order to extort money from criminal defendants, and conspiring to steer cases involving criminal defendants to certain judges in the court system of [ ] County to obtain favorable results. This conduct evidences a person of disreputable character. Respondent used the criminal justice system and the plight of criminal defendants for his extortionate desires and pecuniary benefit. Such a person is not fit to practice law in this Commonwealth. Individuals who subvert justice should expect "a termination of the license to practice law without a promise of its restoration at any future time." *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1987).

In addition to reflecting adversely on his character and his fitness to practice law, the acts evidenced by respon-

dent's conviction seriously undermine public confidence in the judicial system by calling into question the fairness of its judges and advocates. All criminal defendants in this country have a right to a fair trial and are innocent until proven guilty. Respondent's rapacious conduct made a mockery of this system and its goals. Furthermore by conspiring with a judge to raise bail and imprison defendants until they paid respondent his fee or a bribe, respondent, without due process, deprived these individuals of their right to liberty. The egregious behavior undertaken by respondent goes to the core of our criminal justice system and basic notions of fairness and truthfulness.

The fact that others similarly charged were acquitted is irrelevant to this matter and should not be considered. Respondent has been convicted of a serious crime, and that is the basis for imposing discipline upon him.

The power of a court to disbar an attorney should be exercised with great caution, but there should be no hesitation in exercising it when it clearly appears that it is demanded for the protection of the public. *Johnson Disbarment Case,* 421 Pa. 342, 219 A.2d 593 (1966). Respondent's actions represented a dual injury to the public. First, motivated by greed, respondent extorted money from defendants or their relatives in order to facilitate the defendants' acquittal or release from jail. Second, respondent corrupted criminal defendants and their relatives by convincing them that their only recourse was not a fair trial, but the payment of a bribe. In order to protect the public from further injury, respondent must be disbarred.

Disbarment is an extreme sanction which must be imposed only in the most egregious cases because it represents a termination of the license to practice law without a promise of its restoration at any future time. *Office*

*of Disciplinary Counsel v. Keller, supra.* It is necessary where the misconduct involves the types of breach of trust exhibited in this case. Respondent's corrupt activities disparaged himself and the entire bar of this Commonwealth. Where one who has sworn to uphold the law actively conspires to breach it, his fitness to practice is unquestionably destroyed. *Office of Disciplinary Counsel v. Campbell, supra.* Having fully considered respondent's multiple transgressions in violation of our criminal laws and eight of our Disciplinary Rules, the board is convinced that disbarment is the only appropriate sanction.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [　] be disbarred.

The board further recommends that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Schiller and Paris and Ms. Flaherty did not participate in the adjudication.

## ORDER

And now, September 17, 1992, upon consideration of the report and recommendations of the Disciplinary Board dated August 6, 1992, it is hereby ordered that [respondent] be and he is disbarred from the bar of this Commonwealth and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.