## In re Anonymous No. 35 D.B. 91

Disciplinary Board Docket no. 35 D.B. 91.

POWELL, *Member,* November 2, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court

with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On March 21, 1991, the Office of Disciplinary Counsel filed a petition for discipline against respondent, docketed at no. 35 D.B. 91. The petition charged the respondent with violating three Rules of Professional Conduct by commingling and converting several thousand dollars while employed by the Pennsylvania Department of [    ].

Respondent filed an answer to the allegations on April 15, 1991. Respondent admitted to taking the funds in question, but denied that the conversions were knowing or intentional as he was allegedly suffering from psychological infirmities at the time of the misconduct.

In late September 1991, the parties entered into a stipulation which stated that the funds in question had, in fact, been deposited into respondent's account.

A hearing in the matter was held on September 24, 1991 before Hearing Committee [    ], which was chaired by [    ], Esq., and included [    ], Esq. and [    ], Esq. The Hearing Committee filed its report on February 18, 1992 and recommended that respondent be suspended from the practice of law for a period of three years.

On March 9, 1992, respondent filed a brief on exceptions to the Hearing Committee report and requested that respondent be suspended for a period of three years, the last two years to be stayed contingent upon respondent's practicing under the supervision of a monitor, continued participation in psychotherapy, and refrainment from handling client funds.

The Office of Disciplinary Counsel filed a brief in opposition to respondent's position on March 12, 1992 and recommended the adoption of the findings and conclusions of the Hearing Committee.

The matter was adjudicated at the April 1992 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

### FINDINGS OF FACT

(1) Respondent was born in 1943, admitted to the Pennsylvania bar in 1978 and is currently a resident of [     ], Pa.

(2) At all times relevant to these proceedings, respondent was employed as a senior assistant counsel in the Office of Legal Counsel, Pennsylvania Department of [     ]. Respondent was not engaged in the private practice of law. Prior to this misconduct, his professional reputation was impeccable.

(3) Between October 1989 and October 1990, respondent was the trustee of two bank accounts on behalf of the Department of [     ] which were maintained at the [A] Bank and the [B] Bank. The first account, held in trust for [C] Inc., a former Department of [     ] provider, was established with an initial deposit of $600,000 on October 19, 1989. The second account, related to a bankrupt nursing home, [D] Inc., was opened on October 31, 1989 with an initial deposit of $97,593.67.

(4) Respondent was the sole signatory on these accounts and had no authority to personally use any of these funds.

(5) At all times pertinent to these proceedings, respondent maintained a personal bank account (no. [     ]) at the [E] Credit Union.

(6) From February 1990 to September 1990, respondent transferred funds between the two trust accounts and transferred a total of $16,681.80 from the [C] account at the [B] Bank to his personal account at [E] as follows:

(a) [B] Bank check no. 569, in the amount of $8,493.53, dated February 22, 1990, made payable to [respondent], trustee, and signed [respondent], deposited in the [E] account on February 22, 1990.

(b) [B] Bank check no. 578, in the amount of $999.52, dated March 23, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on March 23, 1990.

(c) [B] Bank check no. 347, in the amount of $1,000, dated April 30, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on May 4, 1990.

(d) [B] Bank check no. 349, in the amount of $488.75, dated May 9, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on May 10, 1990.

(e) [B] Bank check no. 350, in the amount of $1,000, dated May 16, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on May 16, 1990.

(f) [B] Bank check no. 352, in the amount of $1,000, dated June 14, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on June 14, 1990.

(g) [B] Bank check no. 354, in the amount of $1,000, dated July 13, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on July 13, 1990.

134

(h) [B] Bank check no. 355, in the amount of $500, dated July 26, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on July 27, 1990.

(i) [B] Bank check no. 357, in the amount of $500, dated August 12, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on August 12, 1990.

(j) [B] Bank check no. 358, in the amount of $700, dated August 21, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on August 21, 1990.

(k) [B] Bank check no. 359, in the amount of $500, dated August 24, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on August 26, 1990.

(l) [B] Bank check no. 587, in the amount of $500, dated September 6, 1990, made payable to [respondent], trustee, and signed [respondent], deposited into the [E] account on September 8, 1990.

(7) Between February 22, 1990 and September 13, 1990, respondent converted to his personal use a total of $10,642.80 of the $16,681.80 he had transferred to his [E] account. On February 27, 1990, respondent issued a check in the amount of $6,039, drawn on his [E] account, to the proper account.

(8) The Division of Audit and Review, Bureau of Financial Operations, Department of [    ], discovered respondent's mishandling of the [D] Inc. and [C] Inc. funds through a routine audit in September 1990.

(9) Respondent made restitution of $10,642.80 and paid interest in the amount of $292.95, drawn from his [E] account on September 17, 1990. He repaid the depleted [D] Trust Account with a $10,000 personal

loan obtained September 13, 1990, and $935.75 in personal funds.

(10) Respondent resigned from his position with the Department of [    ] on or about October 19, 1990 and has cooperated fully with the Office of the Inspector General of the Department of [    ] investigation into his mishandling of the trust funds.

(11) In November and December 1990, respondent met with Dr. [F], Ph.D., J.D., at his lawyer's request for a psychological evaluation. Dr. [F] administered the Minnesota Multi-Phasic Personality Interview and assessed respondent, and concluded that he was severely depressed and had chronic post-traumatic stress disorder as a result of the 1967 death of his mother. Post-traumatic stress disorder was defined by Dr. [F] as a syndrome resulting from experiencing a trauma outside the normal realm of human experience.

## CONCLUSIONS OF LAW

Respondent's conduct has resulted in the following violations of the Rules of Professional Conduct:

(1) R.P.C. 1.15(a) was violated when respondent failed to keep the two entrusted Department of [    ] accounts segregated from each other and separate from his own property.

(2) Respondent violated R.P.C. 8.4(b) when he engaged in the theft of the entrusted funds, which constituted criminal conduct which adversely reflected upon his honesty, trustworthiness and fitness to practice law.

(3) Respondent's commingling and conversion of entrusted funds was dishonest, fraudulent and deceitful in violation of R.P.C. 8.4(c).

## DISCUSSION

In any disciplinary proceeding, the Office of Disciplinary Counsel bears the burden of proving professional misconduct by a preponderance of clear and satisfactory evidence. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The issue in the instant matter is whether respondent's aforementioned theft of funds he held in trust as an attorney for the Department of [    ] constitutes unprofessional conduct.

The petition for discipline alleged that respondent's conduct violated the following Rules of Professional Conduct:

(a) R.P.C. 1.15(a)—which requires an attorney to keep property of clients acquired in the course of representation separate from his own property;

(b) R.P.C. 8.4(b)—which prohibits an attorney from conduct involving a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; and

(c) R.P.C. 8.4(c)—which prohibits an attorney from conduct involving fraud, dishonesty, deceit, or misrepresentation.

The gravamen of the petitioner's complaint is therefore that respondent has been derelict in his professional obligations to hold inviolate the separate funds of [C] Inc. and [D] Inc.

Both petitioner and respondent have stipulated that the theft of funds occurred. The substantive documentary evidence presented by the Office of Disciplinary Counsel, including bank records which demonstrate the commingling of Department of [    ] accounts and deposits of these monies into respondent's personal account, amply illustrates that respondent did,

in fact, violate his fiduciary duties as a trustee and convert entrusted proceeds.

Based on the overwhelming clarity of the evidence presented by the Office of Disciplinary Counsel, we are satisfied that petitioner has sustained the burden of proving professional misconduct. Respondent's commingling of the two entrusted Department of [     ] accounts and his conversion of funds from these accounts constitutes criminal conduct which adversely reflects upon his fitness to practice law, violates his duty to hold entrusted funds inviolate, and is dishonest, fraudulent, and deceitful, in violation of R.P.C. 1.15(a), 8.4(b), and 8.4(c).

Having determined that respondent's conduct did, in fact, violate professional standards, we must next ascertain the appropriate measure of discipline to be imposed. The correct disciplinary sanction will sufficiently protect the interests of the public and maintain the integrity of the bar. *Office of Disciplinary Counsel v. Stern*, 515 Pa. 68, 526 A.2d 1180 (1987). The proper discipline will also reflect our consideration of the totality of facts surrounding the misconduct. *Office of Disciplinary Counsel v. Lucarini*, 504 Pa. 271, 472 A.2d 186 (1983).

Prior to the 1990 commingling and conversion of funds, respondent had been a member of the bar in good standing since 1978. In his answer to the petition for discipline and at the hearing before Hearing Committee [     ], respondent argued that his conduct was the result of a psychological infirmity which rendered him helpless to "make reasonable or logical conclusions about the consequences of his actions." Answer at 2. "Psychiatric disorder is an appropriate consideration as a mitigating factor in a disciplinary proceeding" in Pennsylvania. *Office of Disciplinary Counsel v. Braun,*

520 Pa. 157, 553 A.2d 894 (1984). However, in order for such an infirmity to be considered at the dispositional stage of proceedings, a causal connection between the affliction and the egregious conduct must be established by expert testimony. *Id.*

Respondent presented both testamentary and documentary evidence by an established expert, Dr. [F], Ph.D., J.D., that he suffers from chronic post-traumatic stress disorder. The problem with allowing this psychiatric condition to be used as a mitigating factor in the instant proceeding is that respondent does not fit the accepted, medical standard definition of one suffering from post-traumatic stress disorder. As Dr. [F] told the Hearing Committee, this condition results from experiencing a trauma outside the normal realm of human experience. The precipitating factor which Dr. [F] believed induced this condition in respondent was the 1967 death of his chronically ill mother, and subsequent departure of boarders from his home.

It is our opinion that respondent and his expert were, therefore, unable to meet the *Braun* standard since they were unable to adequately establish that respondent was suffering from a psychiatric condition at the time of his misconduct. Although we sympathize with respondent, to allow his conduct to be mitigated by reason of post-traumatic stress disorder when he has failed to satisfy his own expert's definition of the condition would be a great disservice to both the public and the bar.

Respondent presented no further evidence in mitigation of his misconduct, and petitioner did not introduce any aggravating circumstances for us to consider. We are, therefore, left with the case of a state employee who has commingled and converted entrusted funds. In recognition of the gravity of this misconduct, we

believe that a five-year suspension from the practice of law is warranted so as to impress upon both respondent and the bar the seriousness of this ethical breach.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [     ] be suspended from the practice of law for a period of five years.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Hill, Kerns, Schiller and Ms. McGivern dissent and would recommend disbarment.

Ms. Flaherty and Mr. Leonard did not participate in the adjudication.

## DISSENTING OPINION

HILL, *Member,* November 2, 1992—I respectfully dissent from the majority of the board that recommended respondent be suspended from the practice of law for five years. I believe that [respondent's] conduct is so egregious, that in order to maintain the integrity and standing of the bar, and the administration of justice, and to prevent the subversion of public interest, respondent should be disbarred.[1]

Respondent was employed as a senior assistant counsel in the Office of Legal Counsel, Department of [     ], Commonwealth of Pennsylvania. One of [respon-

---

1. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

dent's] responsibilities was maintenance of two bank accounts on behalf of the department and its clients. He was the sole signatory on both accounts and obviously, had no authority to personally use or borrow the entrusted money.

From February 1990, through September 1990, respondent stole almost $17,000 from the two accounts. Shortly after taking the money, [respondent] returned $6,000 but converted almost $11,000. After he was caught, the result of a routine audit, respondent made full restitution with interest and resigned from the department.

Although respondent's conduct clearly constitutes prima facie violations of the Pennsylvania Crimes Code, he was never, and will not be, criminally charged.[2]

The majority found, by clear and convincing evidence, that the respondent violated Rules of Professional Conduct 1.15(a), 8.4(b) and 8.4(c).[3] While I concur that clear and convincing evidence establishes that [respondent] violated R.P.C. 1.15(a) and 8.4(c), I do not agree that a violation of 8.4(b) occurred.[4]

---

2. See theft by failure to make required disposition of funds received, 18 Pa.C.S. §3927, and misapplication of entrusted property and property of government or financial institutions, 18 Pa.C.S. §4113. The applicable two-year statute of limitations has run.

3. R.P.C. 1.15(a), prohibition against commingling; R.P.C. 8.4(b), prohibiting criminal conduct that adversely reflects on a person's fitness to practice law; and R.P.C. 8.4(c), engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

4. As I understand R.P.C. 8.4(b), a *commission of a criminal act* is the gravamen of the rule. Since respondent has and never will be charged with an offense, and convicted in a court of law, I do not believe that a violation of this rule can be established by clear and convincing evidence.

Respondent has offered, by way of mitigation, evidence that he was suffering from an emotional disorder which caused his misconduct. However, both the Hearing Committee and the majority of the board failed to find the necessary causal connection between his misconduct and the emotional disorder.[5]

As with any case where serious misconduct occurs, we must be guided by this honorable court's wisdom as expressed in the *Keller* case.[6] In applying that standard, we are mindful that "the focus is not upon the respondent but rather it is directed to the impact of his conduct upon the system and its effect on the perception of that system by the society it serves."[7] Therefore, it is appropriate that our sympathy for the respondent's emotional state is transcended by our need to maintain the integrity of the bar and public confidence in our system.

The fact that respondent was considered "an outstanding employee" before he was caught is immaterial in our view. If anything, his colleagues' opinion of him is simply an indication of how deceitful respondent was in presenting a facade consistent with trust, while simultaneously violating that confidence by stealing.

We recommend disbarment, cognizant that:

"It is the duty of the courts to maintain the integrity of the bar and to see that courts and its members 'do not fall into disrepute with the general public through the unprofessional or fraudulent conduct' of attorneys (citations omitted). The power of the court to disbar an

5. See Disciplinary Board Rule 89.293 and *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1984).

6. 509 Pa. 573, 506 A.2d 872 (1986).

7. *Keller, supra.*

attorney should be exercised with great caution, but there should be no hesitation in exercising it when it clearly appears that it is demanded for the protection of the public. *The court by admitting an attorney to practice endorses him to the public as worthy of confidence in the professional relations, and if he becomes unworthy, it is its duty to withdraw its endorsement.*[8]

The Disciplinary Board has recommended disbarment in at least one other case that is similar to the instant matter. In *Office of Disciplinary Counsel v. Troback,*[9] this court concurred in that recommendation and disbarred a lawyer who had stolen securities from a bank while employed there.

## CONCLUSION

In summary, we are convinced that because of [respondent's] breach of trust as an employee of the department, and his breach of trust as a lawyer, and most importantly, *in order to maintain the integrity and standing of the bar, and to uphold the public interest,* the respondent should be disbarred.

Messrs. Kerns and Schiller and Ms. McGivern join in this dissent.

## ORDER

And now, October 13, 1993, a rule having been entered upon respondent by this court on June 30, 1993, to show cause why he should not be disbarred and upon consideration of the responses filed, it is hereby

8. *Johnson Disbarment Case,* 421 Pa. 342, 345-46, 219 A.2d 593, 595 (1966). (emphasis added)
9. 477 Pa. 318, 383 A.2d 952 (1978).

ordered that the rule is made absolute, [respondent] is disbarred from the bar of this Commonwealth and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Justice Zappala, Cappy and Montemuro dissent and would accept the recommendation of the Disciplinary Board of a five-year suspension.