**In re Anonymous No. 92 D.B. 91**

Disciplinary Board Docket no. 92 D.B. 91.

SCHILLER, *Member,* November 6, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On July 25, 1991, the Office of Disciplinary Counsel filed a petition for discipline, docketed at no. 92 D.B. 91, which charged that respondent had engaged in unprofessional conduct in the course of submitting an application for admission to the [A] Bar. Respondent was a law school student at [    ] University and later a member of the Pennsylvania Bar when the alleged misconduct occurred.

The matter was referred to Hearing Committee [    ], which was chaired by [    ], Esquire, and included members [    ], Esquire, and [    ], Esquire.

In early October 1991, the parties entered into extensive stipulations. Respondent admitted that the facts as outlined in the petition for discipline were true.

Hearings on the matter were held on November 27, 1991 and December 16, 1991. On May 1, 1992, Hearing Committee [    ] filed its report, and recommended that respondent be suspended from the practice of law for a period of 18 months.

The matter was adjudicated at the July 24, 1992 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

The following findings of fact are based upon the stipulation of the parties and documentary and testamentary evidence.

(1) Petitioner, whose principal office was at that time situated at Commerce Building, 300 North Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent was born in 1955 and admitted to practice law in the Commonwealth of Pennsylvania on May 14, 1985. His office is located at [    ].

(3) Respondent stipulates to the admission of exhibits P-1 through P-35A without further authentication.

(4) By order dated January 8, 1991, the Supreme Court of [A] adopted a report and recommendation of the Committee on Character of the Board of Bar Examiners of [A] which recommended that certification of respondent's good character be withheld and that his admission to the bar be denied.

(5) The report and recommendation of the committee, dated October 25, 1990, arose from the circumstances set forth in paragraphs 6 through 30 hereinbelow.

(6) In or about 1984, respondent submitted a resume to the [ ] University School of Law ("the law school") placement office.

a. In that resume respondent recorded his law school academic average as 3.6, placing him in the top third of his class.

b. In fact, respondent's average was 2.2, placing him in the bottom fifth of the class.

c. The placement office contacted respondent and ordered him to withdraw the resume and to correct the information with any potential employer to whom it had been submitted.

d. On May 22, 1985, the law school notified the [A] Board of Bar Examiners, before whom respondent's application for admission was pending, of the foregoing incident.

(7) On October 18, 1985, respondent submitted a certified statement of candidate ("first certified statement") to the Committee on Character of the Board of Bar Examiners in [A] ("Committee on Character").

(8) In the first certified statement:

a. Respondent was directed to provide the following information:

"List each employer for whom you have worked in the past ten years, or if you are under 28, since your 18 birthday, including temporary or part-time work (if self-employed, so indicate and describe in detail)."

b. Respondent provided information, consisting of three pages, in response to that item.

c. Respondent was asked:

Other than the present application, have you ever applied for a license to practice law?

d. Respondent responded 'yes' to that question and provided dates of his application to and sitting for the bar of the Commonwealth of Pennsylvania.

(9) Respondent signed the first certified statement under the following certification:

"I hereby certify that the above answers are true and accurate to the best of my knowledge and belief. I am aware that any willful misstatement may prejudice my admission to the bar of the state of [A] and my subsequent good standing as a member of the bar, and may subject me to such penalties as are provided for by law."

(10) By letter dated October 24, 1985, [B] staff attorney to the Committee on Character, notified respondent that the committee had been informed by the law school that he was the subject of disciplinary proceedings due to his filing of a falsified resume and asked respondent for an explanation why he had not disclosed this information in his first certified statement.

(11) By letter dated November 20, 1985 to [B] respondent stated that:

a. Respondent had not provided the information because he believed that the matter had been disposed of informally by the law school, and

b. The grade point average error, resulted from an attempt to round out the figures to the nearest decimal point in my favor.

(12) No further action was taken by the Committee on Character until November 10, 1988, at which time [B] requested that respondent complete a current certified statement of candidate and return it to the com-

mittee along with a certificate of good standing from each jurisdiction where he was admitted.

(13) On March 9, 1989, respondent filed a second certified statement of candidate executed by him on March 6, 1989.

(14) In the second certified statement:

a. Respondent was directed to provide the following information:

"List each employer for whom you have worked in the past ten years or, if you are under 28, since your 18 birthday, including temporary or part-time work (if self-employed, so indicate and describe in detail). List the most recent employer first."

b. In response thereto respondent provided portions of two pages of response, which were inconsistent with the responses he provided in the first certified statement.

c. Respondent was asked:

"Other than the present application, have you ever applied for a license to practice of law?"

d. Respondent responded 'yes' to that question and provided information inconsistent with that provided in the first certified statement.

(15) Respondent signed the second certified statement under the following certification:

"I hereby certify that I have read all of the questions in this statement of candidate and that all of my answers are true and complete. I am aware that if any answers are willfully omitted or false, I may prejudice my admission to the Bar of the State of [A], my subsequent good standing as a member of the bar, and may subject me to such penalties as are provided for by law."

(16) On January 10, 1990, an informal meeting was held with respondent by [C], Esquire, in the presence of [B] pursuant to [A] Bar Admission Rule 302.

(17) At that meeting:

a. Respondent admitted that his alteration of resume was a material one and that his characterization of it in his letter of November 25, 1985 as simply rounding off grades was 'lame and definitely not true.'

b. Respondent stated that he had worked as a sole practitioner in [ ] since his admission to the Pennsylvania Bar in 1985.

(18) Based upon that meeting, [C] submitted to the Supreme Court of [A] a report and recommendation that respondent be certified for admission to the bar.

(19) By order dated February 20, 1990 the Supreme Court of [A] remanded the matter to the Committee on Character for a formal hearing pursuant to R.G. 303, at which time respondent was to provide certain information and documentation constituting "specific evidence that convincingly demonstrates his reform and rehabilitation within the requirements of *In re Matthews* [94 N.J. 59, 81-84 (1983)]."

(20) A hearing was held on May 15, 1990 before two members of the Committee on Character.

(21) At that hearing:

a. Respondent offered into evidence copies of twelve letters which respondent stated 'support my good character reputation in the community.'

b. Respondent was asked to produce the originals of those letters.

c. Respondent testified that he had the originals in his possession and would provide them.

d. Respondent testified that the incident with respect to the resume was 'an isolated act.'

e. Respondent testified with respect to his alleged prior employment, stating that the employment to which he testified was the full extent of his employment before

he passed the bar exam and went into practice for himself.

f. Respondent testified that he had not included certain of the jobs on his second certified statement as he included only his legal experience.

g. Respondent testified that he had been employed by [D], Esquire.

(22) Respondent's testimony at that hearing differed materially from the information in his certified statements.

(23) Respondent's testimony as to his employment by [D] was false, in that he had never been employed by him.

(24) Subsequent to the hearing, under cover of letter dated May 16, 1990, respondent submitted to [E], Esquire, counsel to the Committee on Character, 12 letters purporting to be the originals of the character letters submitted at the hearing, over the names of the following persons:

a. [F], President, [    ];

b. [G], Executive President, [    ];

c. Dr. [H], General Secretary, [    ];

d. [I], owner, [    ];

e. [J], proprietor, [    ];

f. [K], business owner and operator, [    ];

g. [L], owner, [    ];

h. [M], attorney at law;

i. [N], attorney at law;

j. [O], friend;

k. [P], friend;

l. Reverend [Q], Pastor.

(25) The character letters described in paragraphs 24a-i were falsified by respondent, in that:

a. Each of the letters was prepared by respondent;

b. Certain of the individuals whose names appear on the letters do not exist;

c. Of those persons who do exist, most do not know respondent, nor have they ever heard of him;

d. The persons whose names appear on the letters did not know or authorize that their names were being placed thereon; and

e. Certain of the business names and addresses are falsified.

(26) By letter dated July 16, 1990, [E] advised respondent that the committee had discovered the falsification of the reference letters, advised him that the committee would schedule a hearing if he desired to place any explanation or testimony on the record, concerning the falsifications, and further advised respondent that he had two weeks from the receipt of the letter to make a formal written request for further hearing.

(27) At the November 1991 disciplinary hearing on this matter, respondent testified that his conduct was dishonest, prejudicial to the administration of justice, an adverse reflection on his fitness to practice law, and perjurious, "gross misjudgments" which were not egregious "in and of themselves." (N.T. 27.)

(28) Respondent also testified that he had altered the grade point average on his resume simply to bolster his chances of obtaining employment, and that the university had taken no formal action on the matter. (N.T. 31, 32.)

(29) Respondent explained to the Hearing Committee that his rationale for falsifying letters of reference submitted to the [A] Board of Bar Examiners was that

the presentation of witnesses would have jeopardized his law practice since asking them to appear would have led to an automatic presumption of wrongdoing in the community, which would have resulted in the withdrawal of client patronage. (N.T. 38.)

(30) Respondent's brother, cousin, and friend appeared before Hearing Committee [    ] in December 1991 and attested to his favorable reputation for truthfulness in the community. (N.T. 9, 12, 18.)

## III. CONCLUSIONS OF LAW

Respondent's aforestated conduct constitutes violations of the following Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct:

a. D.R. 1-102(A)(4)—which states that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

b. D.R. 1-102(A)(5)—which states that a lawyer shall not engage in conduct that is prejudicial to the administration of justice;

c. D.R. 1-102(A)(6)—which states that a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

d. R.P.C. 8.1(a)—which states that a lawyer is subject to discipline if the lawyer has made a materially false statement in, or if the lawyer has deliberately failed to disclose a material fact requested in connection with, the lawyer's application for admission to the bar or any disciplinary matter;

e. R.P.C. 8.4(b)—which states that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

f. R.P.C. 8.4(c)—which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and

g. R.P.C. 8.4(d)—which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

The instant matter is before the Disciplinary Board R.P.C. 8.1(a), which mandates that a lawyer who has made a substantially false statement in or deliberately failed to disclose a material fact requested in connection with, an application for admission to the bar, is subject to discipline. Because R.P.C. 8.1(a) does not state that its application is limited to requests for admission to the Pennsylvania Bar, we will infer that a deliberate falsehood put forth by a practitioner in this Commonwealth attempting to gain entrance into the bar of another state is subject to discipline under this rule. As the Disciplinary Board stated in [R] "[t]his case presents a clear example of a willful and fraudulent attempt to have an unqualified person admitted to the bar ... ." *Office of Disciplinary Counsel v. [R]*, 27 D.&C.3d 471, 476 (1983). The fact that this respondent is unqualified for the bar of another jurisdiction under its rules and regulations makes his conduct no less reprehensible in this Commonwealth; his dishonest and fraudulent actions are still an affront to our disciplinary system.

Respondent's conduct also provides a basis for discipline independent of R.P.C. 8.1(a). The actions which brought respondent before this board include: the falsification of his grade point average in law school in a vain attempt to bolster his employment prospects, the untrue claims that he had been employed by attorney [D], and most repugnant, his deliberate falsification

of 12 character reference letters, which he presented to the [A] Board of Bar Examiners.

Disciplinary Rule 1-102(A)(4) and R.P.C. 8.4(c) prohibit a lawyer from engaging in conduct which involves dishonesty, fraud, deceit, or misrepresentation. It is obvious to this board that respondent's intentional falsification of an inflated grade point average, for the purpose of enhancing his employment opportunities, presentation of a fictitious work experience, and false letters of recommendation, in an effort to gain admission to the [A] Bar, constitute dishonest, fraudulent, deceitful, and misrepresentative conduct, in violation of D.R. 1-102(A)(4) and R.P.C. 8.4(c). Respondent's intentional attempts to gain employment and [A] Bar admission through the presentation of dishonest credentials exemplifies the conduct proscribed by these rules, and offends the integrity upon which our legal system rests.

Respondent's conduct is more than merely dishonest, deceitful, and fraudulent; indeed, it constituted an actual interference with the administration of justice. In order for the legal system to function properly, as the dispenser of equity and safeguard of impartiality, members of the bar must not engage in conduct which is prejudicial to the administration of justice. See D.R. 1-102(A)(5) and R.P.C. 8.4(d). When respondent tried to gain employment and bar admission based upon false pretenses, he attempted to circumvent the standards which the legal profession has established for the purpose of protecting the administration of justice. His conduct, therefore, violated D.R. 1-102(A)(5) and R.P.C. 8.4(d).

Additionally, respondent's conduct adversely reflected on his fitness to practice law. Disciplinary Rule 1-102(A)(6) and R.P.C. 8.4(b) both characterize behavior which reflects adversely on an attorney's fitness to practice law as professional misconduct. Rule 8.4(b)

further prohibits a lawyer's engagement in a criminal act. For obvious reasons, the actions which brought respondent before this board adversely reflect upon his fitness to practice law. Respondent's admitted commission of perjury and forgery, crimes rooted in dishonesty and fraud, only buttresses our conclusion that his conduct adversely reflects his fitness to function as an officer of the court. There is "... no doubt that dishonesty on the part of an attorney establishes his unfitness to continue practicing law." *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 200, 425 A.2d 730, 733 (1981).

Having determined that respondent's unprofessional conduct violated several disciplinary and professional conduct rules, the final issue before this board is the appropriate discipline to be imposed. The correct disciplinary sanction will protect the interests of the public and maintain the integrity of the bar. See *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 80, 526 A.2d 1180, 1186 (1987).

Respondent presented three witnesses, whom the Hearing Committee found credible, who attested to his good reputation for honesty. Additionally, respondent has practiced law for a period of seven years with a previously unblemished disciplinary record. We will consider these facts, as well as the nature of respondent's misconduct, in formulating the appropriate measure of discipline.

Although respondent's misconduct is grave and offends the integrity of the bar, we are convinced that he is able to be rehabilitated and eventually will be ready to resume the practice of law in this Commonwealth. It is our opinion that a suspension from the practice of law for a period of three years will both uphold the public interest in protection from unfit practitioners and impress upon respondent the serious nature

of his misconduct. We come to this conclusion after careful consideration of respondent's conduct and the transgressions involved, and a recognition that it is our role to discipline a Pennsylvania attorney who has committed acts which violate our professional standards, but not to adjudicate the actual merits of a practitioner's fitness for the bar of another state.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [    ] be suspended for a period of three (3) years.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Paris and Witherel did not participate in the adjudication.

## ORDER

And now, January 24, 1994, upon consideration of the report and recommendations of the Disciplinary Board dated November 6, 1992, it is hereby ordered that [respondent] be and he is suspended from the Bar of this Commonwealth for a period of three years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Papadakos files a dissent.

## DISSENT

PAPADAKOS, *J.,* January 21, 1994—The facts indicate an egregious pattern of lying and the forging

of documents by this attorney. In 1984, he submitted a resume to the Placement Office of the [    ] University School of Law in which he falsified his law school grades by inflating them dramatically. One year later, the law school notified the [A] Board of Law Examiners of this incident pursuant to respondent's application for admission there. Several months later, respondent submitted to the [A] Examiners a certified statement of candidate on which he indicated that he had also sought admission to Pennsylvania. [A] then advised him of its notice regarding the falsified resume and requested an explanation. After replying unacceptably that the inflation of his grades was due to "rounding off" of decimal points, [A] commenced an investigation and discovered that he had lied as well on the application to the bar by falsely listing employment with a lawyer who never hired respondent. Additionally, 12 letters which he submitted to the investigators as character references by others were actually written by him and in each letter he had forged the name of the alleged letter writer. In January 1991, he was denied admission to the [A] Bar.

In 1985, after graduating from [    ], he was admitted to the Pennsylvania Bar and practiced in [    ] for six years. Following denial of admission in [A] in 1991, a disciplinary petition was filed by the Office of Disciplinary Counsel of Pennsylvania. The Pennsylvania Hearing Committee concluded that "respondent's alteration of his resume prior to his admission to the Bar of the Commonwealth of Pennsylvania," (see Tab 4, conclusions of law) and his unethical conduct in applying for admission to [A] constituted serious ethical violations. Disciplinary counsel held that the "pervasiveness of respondent's dishonesty, preceeding [sic] even his admission to the Bar of this Commonwealth, demonstrates the need for severe discipline." (See Tab 6, legal argument.) Respondent,

therefore, was practicing in this Commonwealth after he had already falsified his law school resume, a fact not brought to light until proceedings in [A] were instituted in May 1985, the same date he applied for admission to Pennsylvania. (The record appears to be devoid of any reason why, or if, the [　] University School of Law did not put Pennsylvania on notice of the falsification of his resume.)

Our Hearing Committee recommended suspension for a period of 18 months. The Disciplinary Board favored a three-year suspension. This court is prepared to accept the latter sanction. I dissent on the grounds that the only suitable course of action is to issue a rule to show cause why he should not be disbarred.

The central focus of our attention should be on the issue of admission itself. This is not a case where an attorney was admitted properly and subsequently engaged in unprofessional conduct. Rather, the conduct runs to the question of whether he was eligible for admission in the first place. As I have indicated in my accompanying dissent in *Office of Disciplinary Counsel v. [　]*, no. 76 D.B. 91, the Commonwealth has a reasonable right to reconsider that admission itself. Otherwise, we are stuck with the awful dilemma that an attorney who might not have been admitted had the true facts been known at the time of admission to the bar is thereafter permitted to practice without application of a sanction for the fraud committed upon the Board of Law Examiners and this court. The only mechanism available to us to resolve that problem is to insist on an explanation through a rule to show cause. Failure to disclose falsification should be treated as fraud on the court: it destroys all subsequent proceedings.

Additionally, of course, the conduct itself is subject to consideration of disbarment. Recidivist conduct under our law calls for this sanction. *Berlant Appeal,* 458 Pa. 439, 328 A.2d 471 (1971) and *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981). The fact of the matter is that [respondent] lied on several occasions that were critical to his admission to the study and practice of law. His conduct involved moral turpitude and proves that he had corrupted himself. It is unbelievable to me that a person who lied himself into admission to our bar should not be called forth to answer why his license should not be lifted.

Our awesome power to disbar should be exercised with caution, but we should not hesitate to impose such punishment where it is warranted. *Johnson Disbarment Case,* 421 Pa. 342, 219 A.2d 593 (1966). The acts committed here strike at the fidelity of the system itself, and this attorney should be made to answer the question of his fitness to practice law.